**CLOSING**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **CHAMBERS OF**<br>**MADELINE COX ARLEO**<br>**UNITED STATES DISTRICT JUDGE** | **MARTIN LUTHER KING COURTHOUSE**<br>50 WALNUT ST. ROOM 4066<br>NEWARK, NJ 07101<br>973-297-4903 |

August 30, 2021

VIA ECF

**LETTER ORDER**

Re:   **K.K., et. al v. Parsippany-Troy Hills Township**
      **Civil Action No. 19-19937**

Dear Litigants:

Before the Court are Defendant Parsippany-Troy Hills Board of Education's ("Defendant" or the "District") Motion for Summary Judgment, ECF No. 20, and Plaintiffs K.K.'s and A.K.'s ("Plaintiffs") Motion for Summary Judgment, ECF No. 21.  For the reasons explained below, Plaintiffs' Motion is **GRANTED**, and Defendant's Motion is **DENIED**.

**I.   BACKGROUND**[1]

This action brought pursuant to the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 et seq. ("IDEA"), arises out of an administrative law judge's ("ALJ") denial of Plaintiffs' request for an independent educational evaluation ("IEE") of their child, Ar. K., at public expense. See generally Compl., ECF No. 1.

Ar. K. attended fifth grade in the District during the 2017-2018 school year.  PSUMF ¶ 2. In Fall 2017, Plaintiffs referred Ar. K. to the District's child study team ("CST") due to concerns over Ar. K's social and emotional health.  DSUMF ¶ 4.  Following a meeting between the District and Plaintiffs, the District began an initial evaluation of Ar. K. to assess the need for special education services.[2]  DSUMF ¶¶ 13-14.  Among other things, the CST completed a social

---

[1] These facts are drawn from Plaintiffs' Statement of Undisputed Material Facts ("PSUMF"), ECF No. 21.1, Defendant's Response to Plaintiff's Statement of Undisputed Material Facts ("DRSUMF"), ECF No. 22.1, Defendant's Statement of Undisputed Material Facts ("DSUMF"), ECF No. 20.7, and the Administrative Record ("Tr."), ECF No. 19.  Disputes of fact are noted.

[2] IDEA requires any state receiving federal education funds to provide a "free appropriate public education" to children with disabilities.  See 20 U.S.C. § 1412(1).  A school district's obligations under IDEA are governed by both the "general requirements" set forth in the statute and the more detailed state and federal regulations implementing IDEA. See S.H. v. State-Operated Sch. Dist. of City of Newark, 336 F.3d 260, 264 (3d Cir. 2003).  Relevant here, upon request from the parent of a child, a school district must conduct an initial evaluation to determine whether a child has a disability, the extent of such disability, and the need for special education and related services.  See 34 C.F.R. § 300.301; N.J.A.C § 6A:14-3.4(a).  The initial evaluation must be conducted by the district's designated CST.  See N.J.A.C. § 6A:14-3.1.

assessment performed by school social worker Kim. N. Rom ("Rom") and a functional psychological evaluation performed by school psychologist Jessica Hensal ("Hensal"). Tr. Exs. 18-19.

Following the CST's initial evaluation, the District determined that Ar. K. "[did] not have a disability . . . or the disability does not adversely affect [Ar. K's] educational performance," and that Ar. K. "[was] not in need of special education and related services." PSUMF ¶ 20; Tr. Ex. 22. The District consequently declined to provide special education services. PSUMF ¶ 21.

On February 27, 2018, K.K. emailed Rom to request an IEE for Ar. K. PSUMF ¶¶ 22-23. K.K's email specifically stated:

> "I am writing to discuss [Ar.K]'s placement . . . I can't stop thinking how challenging it will be for [Ar.K] to go to a mainstream 6th grade program. I really think he needs to be in a therapeutic program. I am not sure which program exactly. Maybe an independent evaluation would help shine some light on the questions. I do disagree with some parts of the last evaluations, so I'm asking for an independent. In particular, I'd like a second opinion on his educational, psychological, and psychiatric status.

Tr. Ex. 23. District personnel, including members of the CST, understood K.K.'s email to be a request for an IEE. PSUMF ¶¶ 26-27; Tr. Ex. 29, at 60:7-20.

The District maintains a written policy providing that it "will not accept the use of electronic mail from the parent(s) to submit requests to a school official regarding referral, identification, evaluation, classification, and the provision of a free, appropriate public education." DSUMF ¶ 17; Tr. Ex. 25 ("Policy 2460(18)"). Rom responded to K.K.'s email by indicating that K.K.'s request for an independent evaluation could not be accepted via email and must be made via a signed letter. PSUMF ¶ 24.[3] K.K. testified that she had not been previously informed of the no-email policy, Tr. Ex. 29, at 100:23-24, and had communicated with the CST team via email in the past, id. at 99:10-15, 105:11-12; see also Tr. Ex. 28.[4] K.K. submitted a signed letter again requesting an IEE on March 19, 2018. DSUMF ¶ 19; Tr. Ex. 24.[5]

On March 29, 2018, the District filed a Petition for Due Process seeking an administrative determination that its initial evaluation was appropriate and that no IEE was necessary (the "Petition"). PSUMF ¶ 30; Tr. Ex. 1.[6] After a one-day hearing before ALJ Barry E. Moscowitz, the ALJ rendered a final decision in favor of the District. Tr. Ex. 34. Judge Moscowitz first concluded that the Petition was timely filed within twenty days of Plaintiffs' request for an IEE,

---

[3] The parties dispute whether Rom made this communication by phone call or letter, but they agree to its substance.

[4] The District concedes that K.K. communicated with the CST via email in the past but maintains that such emails "were for the purpose of scheduling, not for establishing a need or seeking consent to perform evaluations." DRSUMF ¶ 25.

[5] The substance of K.K's March 19 letter was materially identical to her February 27 email. See Tr. Exs. 23-24.

[6] Plaintiffs subsequently withdrew their request for educational and psychological assessments and opted to defend only their request for an independent psychiatric assessment. PSUMF ¶ 31.

reasoning that K.K.'s February 27, 2018 email was ineffective under District Policy 2460(18). Id. at 12-13. The ALJ further held that the District's initial evaluation was appropriate, and that Plaintiffs were thus not entitled to an IEE at public expense. Id. at 13-14.

On November 6, 2019, Plaintiffs filed this action on behalf of Ar. K., seeking review of the ALJ's final decision pursuant to 20 U.S.C. § 1415(i)(2). ECF No. 1. Plaintiffs ask this Court to reverse the ALJ's decision and order Defendant to provide an independent psychiatric evaluation at public expense. Id. at 10. Defendant answered on March 30, 2020. ECF No. 5. Following discovery, Plaintiffs and Defendant now each move for summary judgment. ECF Nos. 20-21.

## II. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 56(c), the Court will grant a motion for summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with available affidavits, show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "Summary judgment may be granted only if there exists no genuine issue of material fact that would permit a reasonable jury to find for the nonmoving party." Miller v. Ind. Hosp., 843 F.2d 139, 143 (3d Cir. 1988).

The Court applies a unique "modified de novo" standard of review in IDEA actions brought pursuant to 20 U.S.C. § 1415(i)(2). The Court must give "due weight" to the factual findings and conclusions of the ALJ and explain any departures from the ALJ's factual findings. E.I.H. v. Fair Lawn Bd. of Educ., 747 F. App'x 68, 71 (3d Cir. 2018) (citing S.H., 336 F.3d at 270). By contrast, the ALJ's conclusions of law are subject to plenary review. Id. (citing D.K. v. Abington Sch. Dist., 696 F.3d 233, 243 (3d Cir. 2012)).

## III. ANALYSIS

Plaintiffs first argue that the Petition was untimely and that the ALJ erred by relying on Policy 2460(18) to deem K.K's February 27, 2018 request for an IEE ineffective. The Court agrees.

Federal and state regulations require a school district to timely object to a parent's request for an IEE. The relevant federal regulation provides:

> If a parent requests an [IEE] at public expense, the public agency must, without unnecessary delay, either—
>
> (i) File a due process complaint to request a hearing to show that its evaluation is appropriate; or
>
> (ii) Ensure that an [IEE] is provided at public expense, unless the agency demonstrates . . . that the evaluation obtained by the parent did not meet agency criteria.

34 C.F.R. § 300.502(b)(2). State law clarifies that a school district must file a petition for due process "[n]ot later than 20 calendar days after receipt of the parental request for the independent evaluation." N.J.A.C. § 6A:14-2.5(c)(1)(ii). Plaintiffs contend, and Defendant does not dispute, that a New Jersey school district that fails to file a petition for due process within twenty days

3

forfeits the right to argue that its initial evaluation was appropriate. See, e.g., C.P. o/b/o F.P. v. Clifton Bd. of Educ., No. 19-8469, 2020 WL 4530031, at *7 (D.N.J. Aug. 6, 2020); Edison Twp. Bd. of Educ. v. E.L., OAL No. EDS-8095-18, 2018 WL 6318655, at *7 (N.J. Adm. Nov. 2, 2018).

The facts bearing on the Petition's timeliness are undisputed. On February 27, 2018, K.K. requested an IEE via email. Tr. Ex. 23. On March 19, 2018, K.K. submitted a substantively identical request for an IEE via signed letter. Tr. Ex. 24. The District filed the Petition on March 29, 2018—ten days after K.K.'s letter and thirty days after K.K.'s email. PSUMF ¶ 30. The sole disputed legal issue is whether K.K's February 27 email qualified as a valid IEE request. If so, the Petition was untimely.

The ALJ concluded that K.K.'s email did not qualify as an IEE request in light of Policy 2460(18). This policy states that the District "will not accept the use of electronic mail" for, among other things, parental requests concerning an evaluation. Tr. Ex. 25, at 4. Plaintiffs argue that under the circumstances of this case, the no-email policy (a) imposes an improper condition on Plaintiffs' right to obtain an IEE at public expense, in violation of federal law; and (b) was not previously disclosed to Plaintiffs, and thus ineffective under state law. Though Plaintiffs raised both of these issues during the administrative proceedings, see, e.g., Tr. Ex. 33, at 9-14, the ALJ did not expressly address either in his written decision. Rather, the ALJ found Policy 2460(18) applicable because it "has been approved by the Department of Education, has not been [separately] challenged, and has not been overturned." Tr. Ex. 34, at 13. The District urges the Court to affirm the ALJ's reasoning.

Initially, the Court disagrees with Defendant's suggestion that District Policy 2460(18) must control unless and until it is challenged and overturned in a separate administrative proceeding. In support, the District relies solely on a jurisdictional statute providing that "[t]he commissioner shall have jurisdiction to hear and determine . . . all controversies and disputes arising under the school laws." N.J.S.A. § 18A:6-9. But the mere fact that the Commissioner has jurisdiction to entertain a separate action does not mean that Plaintiffs were <u>required</u> to bring such an action. Defendant has cited no authority suggesting that this Court lacks the power to declare a school district policy ineffective under state or federal law. The Court therefore turns to considering the validity of Policy 2460(18) in these circumstances.

Plaintiffs principally argue that the District's no-email policy is preempted by 34 C.F.R. § 300.502(e), which provides:

> (1) If an [IEE] is at public expense, the criteria under which the evaluation is obtained . . . must be the same as the criteria that the public agency uses when it initiates an evaluation . . . .
>
> (2) Except for the criteria described in paragraph (e)(1) of this section, <u>a public agency may not impose conditions or timelines related to obtaining an [IEE] at public expense</u>.

34 C.F.R. § 300.502(e) (emphasis added). Plaintiffs maintain that Policy 2460(18) operates as an unlawful "condition" on a parent's right to request an IEE by restricting the format of delivery.

The District has not responded to this argument nor offered any contrary interpretation of Section 300.502(e)(2).

The applicable regulations do not define the term "condition," which at its broadest construction may encompass anything "essential to the appearance or occurrence of something else."  See, e.g., The Merriam–Webster Dictionary, "Condition," http://www.merriam-webster.com/dictionary/condition (last visited Aug. 30, 2021).  However, the Department of Education's decision to promulgate Section 300.502(e)(2) reflects a clear intention to specifically protect a parent's right to promptly obtain an IEE, particularly against the background of IDEA's general emphasis on procedural protections.  See Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cty. v. Rowley, 458 U.S. 176, 205-06 (1982) ("[T]he importance Congress attached to . . . procedural safeguards cannot be gainsaid.  It seems to us no exaggeration to say that Congress placed every bit as much emphasis upon compliance with procedures giving parents and guardians a large measure of participation at every stage of the administrative process. . . as it did upon . . . a substantive standard"); see also Edison Twp. Bd. of Educ., 2018 WL 6318655, at *6 ("[A] district should not place barriers to the prompt handling of [IEE] requests.").

Under the circumstances of this case, the Court concludes that Policy 2460(18) operated as an unlawful "condition[ ] . . . related to obtaining an IEE at public expense."  Critically, the District acknowledged receipt of K.K.'s email and knew it to be a parental request for an IEE.  PSUMF ¶¶ 24, 26; DRSUMF ¶¶ 24, 26.  Nevertheless, the District elected not to respond until K.K. submitted a letter request that was substantively identical to the email, except for its format of delivery.  Given Defendant's clear understanding that K.K. was requesting an IEE, its decision to elevate form over substance unnecessarily and arbitrarily interfered with Plaintiffs' right to a prompt resolution of their request.

Defendant contends that state law permits it to maintain and enforce a no-email policy, relying on N.J.A.C. § 6A:14-1.2(b)(18).  That regulation provides:

> Each district board of education shall have policies, procedures, and programs . . . to ensure the following: . . .
>
> 18. When the school district utilizes electronic mail, parents are informed as to whether they may use electronic mail to submit requests to school officials regarding referral, identification, evaluation, classification, and the provision of a free, appropriate public education.  If this is permitted, parents shall be informed of the procedures to access the electronic mail system.

N.J.A.C. § 6A:14-1.2(b)(18).  The Court disagrees with the District for two reasons.

First, to the extent N.J.A.C. § 6A:14-1.2(b)(18) conflicts with federal regulations, it is preempted.  See Fellner v. Tri-Union Seafoods, L.L.C., 539 F.3d 237, 243 (3d Cir. 2008) ("Where Congress has delegated the authority to regulate a particular field to an administrative agency, the agency's regulations issued pursuant to that authority have no less preemptive effect than federal statutes.").  Notwithstanding a district's general right to maintain a no-email policy,

5

Section 300.502(e)(2) grants enhanced protection in one specific sphere: a parent's right to request an IEE following an initial evaluation by a school district.

Second, the plain language of the state regulation requires a district that uses email to ensure parents are informed of any policy restricting the use of email for requests to school officials. At least one New Jersey ALJ has determined that a no-email policy is ineffective where a district fails to provide advance notice of the policy, and a parent requests an IEE via email:

> Although Edison communicated via email for years with [a parent], it chose not to specifically provide her with a copy of the policy requiring a written, not emailed request for an IEE. Instead once [a district employee] received the request via email, he refused to accept it, requiring [the parent] to resubmit the same letter request that he had just reviewed via a mailed or hand delivered written format. While the policy he cited was present on the district's website, as noted by respondents' counsel, it was difficult to locate.

Edison Twp. Bd. of Educ., 2018 WL 6318655, at *7. The ALJ concluded that under these facts, Edison imposed an improper "barrier to a speedy resolution of petitioners' IEE request" and found that a due process petition filed twenty-one days after the parent's initial email was untimely. Id.

The reasoning of Edison Township is persuasive. Here, K.K. communicated with members of the CST via email during the initial evaluation. PSUMF ¶ 25; DRSUMF ¶ 25. As a district that "utilizes electronic mail," Defendant thus had an affirmative obligation to ensure parents were informed of any no-email policy. N.J.A.C. § 6A:14-1.2(b)(18). However, K.K. testified that she had not been informed of Policy 2460(18) until her February 2018 email, and Policy 2460(18) was not easily accessible on the District's website. See Pl. Mem at 21-22 & n.3. Notably, Defendant does not dispute K.K.'s testimony or argue that the no-email policy was readily accessible by the public. Thus, even to the extent federal law does not preempt Policy 2460(18), the District's failure to provide advance notice of this policy rendered it ineffective with respect to Plaintiffs' email request for an IEE.

For these reasons, K.K.'s February 27, 2018 email qualified as a valid request for an IEE. Because the District failed to file the Petition within twenty days, it forfeited its right to argue that its initial evaluation was appropriate. See C.P., 2020 WL 4530031, at *7. Defendant must now "[e]nsure that an [IEE] is provided at public expense" unless it later demonstrates that an "evaluation obtained by the parent did not meet agency criteria." 34 C.F.R. § 300.502(b)(2)(ii); see also N.J.A.C. § 6A:14-2.5(c)(1)(i).[7]

### IV. CONCLUSION

For the reasons stated above, Defendant's Motion for Summary Judgment, ECF No. 20, is **DENIED**, Plaintiffs' Motion for Summary Judgment, ECF No. 21, is **GRANTED**, and the determination of the ALJ is **REVERSED**. The District is hereby ordered to ensure Ar. K. receives

---

[7] The Court's determination does not automatically mean that the District is liable for the cost of an independent psychiatric evaluation. The District retains the right to challenge an evaluation that fails to comply with agency criteria, a right which "by its nature, cannot be forfeited at the time of the parent's initial demand for an IEE." C.P., 2020 WL 4530031, at *9.

6

an independent psychiatric evaluation at public expense, subject to its right to later challenge an evaluation that fails to comply with agency criteria.

            **SO ORDERED.**

            */s Madeline Cox Arleo*
            **MADELINE COX ARLEO**
            **UNITED STATES DISTRICT JUDGE**